1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11

OMAR ERNEST EPPS,

CASE NO. 10cv1949-BEN (MDD)

12

Plaintiff,

vs.

REPORT AND
RECOMMENDATION RE:
DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT

13
14

N. GRANNIS, et al.,

15

Defendants.

[Doc. No. 47]

16
17
18
19

        This Report and Recommendation is submitted to United States District Judge Roger T.
Benitez pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rules 72.1(c) and 72.3(f) of the United
States District Court for the Southern District of California.

20

## I.       PROCEDURAL HISTORY

21
22
23
24
25
26
27
28

        On September 17, 2010, Omar Ernest Epps ("Plaintiff"), a state prisoner proceeding *pro se*
and *in forma pauperis*,  filed a civil rights complaint alleging violations of his First Amendment
rights under 42 U.S.C. § 1983 and violations of the Religious Land Use and Institutionalized
Persons Act ("RLUIPA").  (Complaint at 1-2).  On February 16, 2011, Plaintiff filed a First
Amended Complaint ("FAC").  (Doc. No. 13).  On May 12, 2011, Defendants filed a Motion to
Dismiss Plaintiff's First Amendment Complaint.  (Doc. No. 47).  On June 10, 2011, Plaintiff filed
a Response in Opposition to Defendants' Motion.  (Doc. No. 54).  On June 15, 2011, Defendants
filed a Reply to Plaintiff's Response.  (Doc. No. 55).

## II.    STATEMENT OF FACTS

Plaintiff alleges violations of his Constitutional rights and RLUIPA in six counts as summarized below.

In Count One, Plaintiff contends that Defendants Hopper, Powell, Pickett, Greenwood, Janda and Ochoa violated his First Amendment rights to freedom of speech and freedom of religion, his Due Process rights, and RLUIPA when they refused to allow him to bring a piece of fruit into the prison chapel.  (Doc. No. 13 at 5).

In Count Two, Plaintiff contends that Defendants B. Lew, J. Builteman, T. Ochoa and N. Grannis violated his right to freedom of religion, the establishment clause of the First Amendment, and RLUIPA when they refused to place him on a modified Kosher diet.  Id. at 7.

In Count Three, Plaintiff contends that Defendants G. Janda, Larry Small, R. Madden, T. Ochoa and N. Grannis violated his right to freedom of religion and RLUIPA when he was not allowed to observe Ramadan in the chapel with the Muslim congregation.  Id. at 9.

In Count Four, Plaintiff contends that Defendants M. Carpio, R. Madden, R. Powell, T. Ochoa and N. Grannis violated his right to freedom of religion and RLUIPA when they refused to allow him to perform the Eidul Fitr prayer after Ramadan.  Id.

In Count Five, Plaintiff contends that Defendants W. Meister, B. Bentley, T. Ochoa and N. Grannis violated his right to freedom of religion and RLUIPA when they withheld a Ramadan package that had been shipped to Plaintiff.  Id. at 11.

In Count Six, Plaintiff contends that his First Amendment Right to Freedom of Speech and RLUIPA were violated on April 26, 2010, when prison staff confiscated his photocopied versions of religious books and a self-defense manual.  Id. at 14.

## III.    LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the ...claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93

(2007) (internal citations omitted).  Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell v. Twombly, 550 U.S. 544, 555-56 (2007).  Thus, while specific detail is not required, every complaint must, at a minimum, plead "enough facts to state a claim for relief that is plausible on its face." Id. at 547; Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1066 (9th Cir. 2008).

The court must assume the truth of the facts which are presented and construe all inferences from them in the light most favorable to the non-moving party.  Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  A *pro se* party's pleadings should be construed liberally.  Id. However, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Bell, 127 550 U.S. at 555. Thus, the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (internal citation omitted).  Furthermore, the court may not "supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

## IV.  DISCUSSION

Plaintiff brings claims under both 42 U.S.C. § 1983 and RLUIPA.  Defendants contend that Plaintiff's FAC includes claims brought on a theory of supervisory liability which is unavailable in § 1983 actions.  Defendants also contend that Plaintiff has failed to state a valid claim under either § 1983 or RLUIPA in any of the six counts contained in his FAC against any of the remaining Defendants.  Defendants also assert that even if Plaintiff has stated a valid claim, they are protected by qualified immunity.  The Court will first determine whether Plaintiff has improperly brought any claims under a theory of supervisory liability and then address the merits of Plaintiff's claims against the remaining Defendants.  Finally, the Court will address Defendants' qualified immunity defense.

/ / /

### 1.  Supervisory Liability

As an initial matter, Defendants contend that all  § 1983 claims in Plaintiff's FAC directed at Defendants Pickett, Greenwood, Powell, Bentley, Janda, Ochoa, Grannis, and Builteman should be dismissed because they are based on a theory of supervisory liability, which is unavailable to Plaintiff's in § 1983 actions.  (Doc. No. 47 at 7).  In his Opposition, Plaintiff counters that supervisors may be liable under § 1983 for their personal participation in constitutional deprivations.  (Opp. at 11-12).  In their Reply, Defendants assert that Plaintiff failed to allege personal participation by any of the above-named Defendants.  (Reply at 3).  Defendants assert that Plaintiff has only asserted a general "failure to train" by these Defendants, which is insufficient to establish personal participation in any alleged unconstitutional conduct.  Id.

Defendants are correct that an action under § 1983 cannot proceed on a theory of *respondeat superior* because vicarious liability is inapplicable.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009), __ U.S. __.  Rather, a Plaintiff in a § 1983 action must plead that each defendant, through his own actions, subjected him to an unconstitutional deprivation of rights.  Id.  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, when he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

A supervisor may be liable, as an individual, for that supervisor's "training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." Starr v. Baca, 652 F.3d 1202, at 1207.  In order to show deliberate indifference, "a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others." Id.  "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Id.

/ / /

1      <u>Defendant Powell</u>

2          Plaintiff's only claim against Defendant Powell is contained in Count One of Plaintiff's

3  FAC, where he asserts that Powell, along with Defendant Hopper, denied him entry to the prison

4  chapel. (FAC at 5).  Plaintiff alleges personal participation by Powell in the asserted

5  unconstitutional action.  Accordingly, Plaintiff's claim against Powell is not based on a theory of

6  supervisory liability and will be addressed on the merits.

7          <u>Defendants Greenwood, Bentley, Janda, Ochoa, Builteman, and Grannis</u>

8          Construed liberally, Plaintiff's allegations against these Defendants consists only of

9  assertions that they denied the appeals of his grievances.  A plaintiff cannot hold prison officials

10 liable merely for involvement in a prison appeals process.  <u>Mann v. Adams</u>, 855 F.2d 639, 640

11 (9th Cir. 1988).  Plaintiff does not allege that the appeals were conducted improperly; his

12 complaint appears to be that the appeals were decided unfavorably.  Though the court must

13 construe Plaintiff's claim liberally, it cannot supply essential elements of a claim that are missing.

14 Accordingly, it is recommended that Defendants' Motion be **GRANTED** as to these Defendants

15 and each of Plaintiff's § 1983 claims against these Defendants be **DISMISSED** without prejudice.

16     <u>Defendant Pickett</u>

17         Plaintiff's complaints against Defendant Pickett go beyond the mere assertion that an

18 appeal was denied.  (FAC at 3).  Plaintiff contends that not only did Pickett deny his appeal, but

19 that Pickett failed to follow prison guidelines which require Pickett to interview Plaintiff before

20 ruling on Plaintiff's appeal.  <u>Id.</u>

21         As stated above, plaintiffs cannot hold prison officials liable merely for involvement in a

22 prison appeals process.  <u>Mann</u>, 855 F.2d at 640.  Failure to follow procedural requirements for

23 handling an appeal, even when those requirements are mandatory also does not, without more,

24 subject prison officials to liability under § 1983.  <u>Smith v. Noonan</u>, 992 F.2d 987, 989 (9th Cir.

25 1993); <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993).

26         Plaintiff contends that Pickett violated prison regulations when he failed to interview

27 Plaintiff before evaluating Plaintiff's appeal.  (FAC at 2).  Accepting as true Plaintiff's contention

28 that this violated prison procedure, Plaintiff fails to allege a valid claim under § 1983.  The failure

to follow a procedural rule does not subject Defendant Pickett to liability under § 1983.  Smith, 992 F.2d at 989.  Accordingly, it is recommended that Defendants' Motion be **GRANTED** as to all of Plaintiff's § 1983 claims against Defendant Pickett and that those claims be **DISMISSED** without prejudice.

### 2.   Claims against Remaining Defendants

Plaintiff's claims against the remaining Defendants involve alleged violations of his First Amendment rights and RLUIPA.  Each of the six counts will be addressed below using the following guiding principles.

First Amendment Claims

When a prison regulation infringes on a prisoner's First Amendment rights, that regulation is valid if it is reasonably related to a legitimate penological interest.  Turner v. Safley, 482 U.S. 78, 89-96 (1987).  In Turner, the Supreme Court provided four factors that a court must consider in order to determine if a regulation is reasonable: (1) the existence of a valid, rational connection between the prison regulation and the legitimate government interest asserted to justify the regulation; (2) whether the inmate has alternative available means of exercising the allegedly infringed right; (3) the impact of accommodating the asserted constitutional right on other inmates, prison officials, and prison resources; and, (4) the absence or availability of ready alternatives to the regulation, even though the state need not show that the regulation is not the least restrictive means of achieving their stated policy goals.  Id. at 89-90.  The prisoner asserting that his rights have been infringed has the burden of proving that the challenged prison regulation is not valid.  Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

RLUIPA Claims

Plaintiff also challenges the prison regulations under RLUIPA.  RLUIPA prohibits the government from imposing a substantial burden on the religious exercise of a person residing in or confined to a correctional facility, unless the imposition of that burden is: (1) in furtherance of a compelling government interest; and, (2) is the least restrictive means of furthering that interest.  42 U.S.C. § 2000cc-1(a).  A plaintiff alleging a cause of action under RLUIPA has the burden of introducing prima facie evidence to support a claim that his religious freedom has been

substantially burdened.  42 U.S.C. § 2000-2(b).

If the plaintiff sufficiently alleges a substantial burden to his religious exercise, the court then considers whether accommodating the plaintiff would override other significant interests. Cutter v. Wilkinson, 544 U.S. 709, 722 (2005).  Specifically, RLUIPA may not be used to "elevate accommodation of religious observances over an institution's need to maintain order and safety." Id.  Courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  Id.

### A.   Count One

In Count One, Plaintiff contends that Defendants Hopper, Powell, Pickett, Greenwood, Janda and Ochoa violated his First Amendment rights to freedom of speech and freedom of religion, his Due Process rights, and RLUIPA when they refused to allow him to bring a piece of fruit into the prison chapel.  (Doc. No. 13 at 5).  As discussed above in Section IV-1, it has been recommended that Plaintiff's claims against all Defendants, other than Defendants Hopper and Powell, be dismissed for failure to state a claim.  The discussion below, however, applies to all Defendants in the event that the district court does not adopt this Court's recommendation.

Plaintiff contends that on October 1 and 2, 2006, he was fasting for Ramadan and attempted to enter the chapel with a piece of fruit for Iftar, an Islamic observance involving the breaking of the fast.  Id..  Plaintiff contends that Defendants Hopper and Powell refused to allow him to bring his food into the chapel.  Id.  Plaintiff appealed this decision, and Defendant Pickett denied his appeal at the first level of review and refused to interview him.  Id.  Plaintiff contends that Pickett was required to, but did not, interview him in accordance with CCR § 3084.5(f), and falsely stated that an interview had been conducted.  Id.  Plaintiff claims that Defendant Greenwood approved the review without verifying that an interview was conducted.  Id.  Plaintiff appealed to the second level of review adding his claim that he was not properly interviewed.  This review was denied by Defendants Janda and Ochoa.  Id.  Finally, Plaintiff appealed to Defendant Grannis who partially denied the appeal and remanded in part to the Religious Review Committee, but Plaintiff contends no further review was conducted.  Id. at 5-6.  Plaintiff contends that because

1    of these decisions, he was unable to practice his religion and suffered spiritually.  Id.

2        Defendants assert that all of Plaintiff's claims in Count One of his FAC are time-barred by

3    California's two-year statute of limitations.  (Doc. No. 47-1 at 5).  Plaintiff counters that the

4    applicable statute of limitation is four years for his RLUIPA claim, and that his other claims are

5    not barred because he is suffering an ongoing harm, including repeated occurrences of the

6    violations described in his FAC.  (Opp. at 11).  In their Reply, Defendants contend that all of

7    Plaintiff's claims, including his RLUIPA claim, should be governed by California's two-year

8    statute of limitations period and are thus all time-barred.  (Reply at 55).

9        Count One - § 1983 Claims

10       Plaintiff's claims in Count One under 42 U.S.C. § 1983 are time-barred.  The statute of

11   limitations period for claims arising under 42 U.S.C. § 1983 is governed by the forum state's

12   statute of limitations period for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 266-67

13   (1985).  In California, that period is two years.  Cal. Civ. Proc. Code. § 335.1.  In his FAC,

14   Plaintiff states that his claims under Count One arise from events taking place on October 1 and 2,

15   2006.  (FAC at 3).  Plaintiff filed his Complaint on September 17, 2010, nearly four years after the

16   events at issue.  (Doc. No. 1).  Although California law provides generally for a two-year tolling

17   period for plaintiffs in prison at the time the action accrues, prisoners serving a life term without

18   parole are excepted from the tolling period. Cal. Civ. Code. § 352.1(a).  Plaintiff is serving a life

19   term without possibility of parole.  (Doc. No. 55 at 2).  Accordingly, Plaintiff's claims in Count

20   One under 42 U.S.C. § 1983 are time-barred.

21       In his Opposition, Plaintiff argues that the statute of limitations should not bar his claims

22   because he is suffering an ongoing harm.  (Doc. No. 54 at 11).  Plaintiff, however, did not assert

23   any ongoing harm in his FAC.  (FAC at 5-6).  Plaintiff's claim is limited to the events of October 1

24   and 2, 2006, and he pleads no facts to support his new claim of ongoing harm.  Id.  Furthermore,

25   many of the claims in Count One involve the handling of Plaintiff's grievance following the

26   incident.  Id.  Plaintiff alleges specific incidents of misconduct associated with that grievance.  Id.

27   These singular incidents do not constitute an ongoing harm.  Accordingly, Plaintiff's claims

28   remain barred by California's two-year statute of limitations period.

1    Plaintiff also asserts, in a conclusory statement, that his right to free speech was violated.

2    Plaintiff does not, however, allege with any particularity or clarity how that right was violated.

3    Vague and conclusory allegations are insufficient to overcome a motion to dismiss under Fed. R.

4    Civ. P. 12(b)(6).  Sprewell, 266 F.3d at 988.

5    It is recommended that Defendant's Motion be **GRANTED** as to Plaintiff's First

6    Amendment claims in Count One arising under 42 U.S.C. § 1983, and that those claims be

7    **DISMISSED** without prejudice.

8    Count One - RLUIPA Claim

9    Plaintiff's RLUIPA claim is not time-barred.  Defendants argue that RLUIPA claims are

10   governed by California's two year statute of limitations period, which as discussed above, has

11   expired.  (Doc. No. 47).  However, as Defendants acknowledge in their Reply, state statute of

12   limitations periods only apply when they are not in conflict with federal law.  (Doc. No. 55 at 2).

13   While RLUIPA does not contain its own statute of limitations period, federal law provides that "a

14   civil action arising under an Act of Congress enacted after [December 1, 1990]" has a four-year

15   statute of limitations period.  28 U.S.C. § 1658 (2008).  RLUIPA was enacted in 2000.  This

16   federal limitations period conflicts with California's limitation period and must be applied.  Jones

17   v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004) (holding that a four-year statute of

18   limitations period applies to claims made possible by a post-1990 enactment); United States v.

19   Maui County, 298 F. Supp.2d 1010, 1012-13 (D. Hawai'i 2003).  Defendants do not dispute that

20   Plaintiff filed his Complaint within this four-year period.  Because Plaintiff's claim is not time-

21   barred, the Court proceeds to the merits of the claim.

22   Defendants contend that Plaintiff has not alleged a significant burden to his religious

23   exercise, and even if he had, the regulation prohibiting Plaintiff from bringing fruit into the chapel

24   is supported by a compelling government interest.  (Doc. No. 47 at 17-18).  Defendants assert that

25   prisoners use fruit to make alcohol, which is banned in the prison and would create a security risk.

26   Id. at 18.  Defendants note that fruit may be brought into the chapel at the request of the prison's

27   Muslim chaplain, but that no request was made.  Id.  Defendants also note that all religious groups

28   are subject to these rules, and Plaintiff's contention that other religious groups have been allowed

1  to bring food into the chapel ignores that these groups properly followed the existing procedures.

2  Id.

3       In his Opposition, Plaintiff contends that his inability to make Iftar was a substantial

4  burden on his religious exercise.  (Opp. at 23-24).  Plaintiff also contends that Defendants' concern

5  that Plaintiff will use the fruit to make alcohol is not a compelling interest, as the chapel is under

6  security supervision and all prisoners are searched upon entering and exiting the chapel.  Id. at 24.

7       Plaintiff has failed to establish that his religious exercise was substantially burdened.

8  While Plaintiff contends he was not allowed to bring food into the chapel, he does not refute

9  Defendants' assertion that he could have done so with permission of the Muslim chaplain.

10  Plaintiff does not explain how the requirement that he consult the Muslim chaplain for permission

11  represents a substantial burden.  42 U.S.C. § 2000cc-1(a).  Even if this were a substantial burden,

12  Defendants have a compelling interest in maintaining the security of the prison and monitoring

13  food and drink.  Accordingly, it is recommended that Defendants' Motion be **GRANTED** as to

14  Plaintiff's RLUIPA claims under Count One of his FAC, and his claims be **DISMISSED** without

15  prejudice.

16                         **Count Two**

17       In Count Two, Plaintiff contends that Defendants B. Lew, J. Builteman, T. Ochoa and N.

18  Grannis violated his right to freedom of religion, the establishment clause of the First Amendment,

19  and RLUIPA when they refused to place him on a modified Kosher diet.  Id. at 7.  For the reasons

20  discussed above in Section IV-1, only the claim against Defendant Lew remains.

21       Plaintiff, a Muslim, requested and received a religious vegetarian diet at Calipatria.  Id.  He

22  contends, however, that this diet has caused him chronic constipation.  Id.  Plaintiff believes this

23  constipation makes him "impure" and burdens his religious exercise.  Id.  Plaintiff also contends

24  that his cholesterol has increased on this diet.  Id.  In order to remedy these problems, in February

25  and July, 2008, Plaintiff requested to be placed on the Kosher meal plan offered by Calipatria.

26  Id.  Defendant Builteman acknowledged the request, and stated that Plaintiff would be placed on

27  the Kosher diet if Defendant B. Lew, Calipatria's Jewish chaplain, agreed.  Id.  Lew interviewed

28  Plaintiff, but denied his request.  Id.  Plaintiff's appeal to Defendant Ochoa at the second level of

1  review was denied.  Id.  Plaintiff's appeal to N. Grannis at the third level of review was denied

2  because Plaintiff was not Jewish and Plaintiff could receive Halal food.  Id.

3         Count Two - § 1983 Claims

4         Defendants contend that because Plaintiff's claim alleges that one set of prisoners are

5  treated differently from other prisoners, his claim is more appropriately brought as a claim under

6  the equal protection clause rather than the establishment clause.  (Doc. No. 47 at 21).  The Court

7  will analyze Plaintiff's claim under both the establishment clause and the equal protection clause.

8         First, the establishment clause prevents the government from preferring one religion over

9  another or coercing anyone to support or participate in a specific religion.  Lee v. Weisman, 503

10 U.S. 577, 587 (1992).  However, the state may accommodate a prisoner's religious practices

11 without violating the establishment clause.  Id.  Here, Plaintiff contends that Defendants violated

12 the establishment clause by refusing to put him on the Kosher diet.  (FAC at 8).  Plaintiff contends

13 that because he could not receive the Kosher diet unless he converted to Judaism, he was pressured

14 to convert.  Id.

15        The provision of Kosher meals to Jewish inmates, however, simply seeks to alleviate a

16 government-created burden on private religious exercise. See Cutter, 544 U.S. at 713.  The ability

17 to receive a religious diet is not an affirmative benefit being granted only to Jewish inmates.

18 Furthermore, Plaintiff acknowledges that there are Halal alternatives available and that he receives

19 Halal meat.  Plaintiff's complaint is more narrowly focused in that he contends his current diet

20 causes a medical condition that inhibits his religious practice.  (FAC at 6-9).  There is no evidence

21 of government coercion or entanglement in crafting or implementing the prison meal policies or of

22 any action by any Defendant that would implicate the establishment clause.  Accordingly, it is

23 recommended that Defendants' Motion be **GRANTED** as to Plaintiff's establishment clause claim

24 in Count Two of his FAC, and the claim be **DISMISSED** without prejudice.

25        Second, "[t]o state a claim under 42 U.S.C. § 1983 for a violation of the equal protection

26 clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent

27 or purpose to discriminate against the plaintiff based upon membership in a protected class."  Lee

28 v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).  "The Equal Protection Clause entitles

1    each prisoner to 'a reasonable opportunity afforded fellow prisoners who adhere to conventional

2    religious precepts.'" Shakur, 514 F.3d at 891 (quoting Cruz v. Beto, 405 U.S. 219, 322 (1972).  As

3    with Plaintiff's Free Exercise Clause claim, his Equal Protection Clause claim is also analyzed

4    under the four part Turner test.  Shakur, 514 F.3d at 891.  The Court analyzes those claims as

5    follows:

6         Defendants contend that under the first Turner factor, there is a valid connection between

7    the challenged regulation and a legitimate government interest.  Prisons have a legitimate interest

8    in running a simplified food service, rather than catering to individual prisoners.  Ward, 1 F.3d at

9    877.  While the fact that the Kosher meal plan Plaintiff wishes to be placed on already exists

10   undercuts Defendants argument, the Ninth Circuit has previously recognized that there is a rational

11   connection between denying Muslim prisoners Kosher meals and a prison's administrative and

12   budgetary concerns.  Shakur, 514 F.3d at 878.  However, in the context of a motion to dismiss, the

13   extent of the prison's concerns cannot be ascertained and the Court cannot determine the validity

14   of the asserted interest.  Id.  Thus, this factor weighs in favor of neither party.  Shakur, 514 F.3d at

15   891.

16        The second Turner factor looks to whether the plaintiff has alternative means of practicing

17   his religion.  Ward, 1 F.3d at 877.  Here, Plaintiff was not prohibited from attending Muslim

18   services, reading the Qu'ran, or eating food that is in keeping with his religious practice.  While

19   Plaintiff contends that his diet is not a true Halal diet, it is undisputed that he is able to participate

20   in many fundamental practices of his religion.  Accordingly, this factor weighs in favor of

21   Defendants.  Shakur, 514 F.3d at 886 (citing O'Lone v Estate of Shabazz, 482 U.S. 342, 352

22   (1987).

23        Under the third Turner factor, the Court examines the impact of accommodation on the

24   prison and other inmates.   Defendants contend that this factor weighs in their favor, as it is a

25   financial and administrative burden on the prison to provide prisoners with the exact meals of their

26   choice.  However, the bare assertion that a Kosher diet is more expensive is not enough to show

27   that this factor weighs in Defendants' favor.  Shakur, 514 F.3d at 877.  Accordingly, this factor

28   weighs slightly in Plaintiff's favor.

Finally, under the fourth <u>Turner</u> factor, the court considers whether there are alternative policies that would accommodate the plaintiff.  Here, Defendants contend that Plaintiff has access to an alternative to his current Halal diet, in that he can receive Halal meat with dinner when the general population has meat.  (Doc. No. 47 at 13).  Defendants note that while Plaintiff is not happy with this diet, it addresses his health concerns and is in keeping with his religious practice. <u>Id.</u>  Plaintiff, on the other hand, contends that his current diet is not a true Halal diet, and causes dietary problems.  (FAC at 7).  Plaintiff asserts that either a proper Halal diet or the Kosher diet would meet his needs.  <u>Id.</u>  Defendants also assert that there are alternative diet programs he can pursue which would cure his medical problems and meet his religious needs.  (Doc. No. 47 at 13). Because it is not clear whether any of the alternative diet plans available to Plaintiff would meet his needs, this factor weighs in neither party's favor, though the Court notes that Defendants have made a stronger showing of an acceptable alternative than did the defendants in <u>Shakur</u>, who did not offer a medical alternative.

Considering all the <u>Turner</u> factors, the record is not sufficient to show that the restrictions prohibiting Plaintiff from being placed on the Kosher diet plan or another Halal alternative are reasonably related to a legitimate interest.  Accepting Plaintiff's FAC as true, and interpreting his allegations liberally, the Court cannot say at this time that his claim lacks merit.  Accordingly, it is recommended that Defendants' Motion be **DENIED** as to Plaintiff's First Amendment claims under the free exercise and equal protection clauses in Count Two of his FAC.

Count Two - RLUIPA Claim

In <u>Shakur v. Schiro</u>, 514 F.3d 878 (9th Cir. 2008), the Ninth Circuit considered whether a plaintiff sufficiently asserted a substantial burden in alleging that the prison's vegetarian diet plan caused him gastrointestinal problems and left him spiritually impure.  <u>Shakur</u>, 514 F.3d at 878. The court held that summary judgment for the defendant was improper finding that there were material questions of fact related to defendant's refusal to serve plaintiff Halal or Kosher meat.  <u>Id.</u> at 890-891.

In their Motion, while Defendants acknowledge that the facts in <u>Shakur</u> are similar to the facts here, they contend that <u>Shakur</u> is distinguishable because <u>Shakur</u> dealt with a plaintiff

receiving a purely vegetarian diet, while this Plaintiff is being offered Halal meat in addition to the vegetarian diet. (Doc. No. 47 at 18). Defendants also challenge Plaintiff's claims that his stomach problems are related to the vegetarian diet since Plaintiff does receive meat. Id. However, this misconstrues Plaintiff's allegations. While Plaintiff states his health problems arose after being placed on the vegetarian diet, he maintains that these problems exist even though he now receives Halal meat. (FAC at 9).

While Defendants assert that Shakur is inapplicable because Plaintiff is not receiving a purely vegetarian diet, the Shakur court emphasized that the court must consider the extent of the burden on the plaintiff's beliefs, the burden that would be created on defendants by accommodating the plaintiff's requests, and the existence of less restrictive alternatives. Shakur, 514 F.3d at 891. Here, even though the Plaintiff receives Halal meat, there is no indication that this has alleviated the burden on his religious practice as he still receives food he considers to violate his Halal diet. Furthermore, Plaintiff has pointed to alternatives that exist that would accommodate him, and Defendants have failed to show the extent of their burden in making this accommodation. Accepting the allegations in Plaintiff's FAC as true, as this Court must do, Plaintiff has alleged a valid cause of action. Accordingly, it is recommended that Defendants' Motion be **DENIED** as to Plaintiff's RLUIPA claim in Court Two of his FAC.

### Counts Three and Four

Counts Three and Four involve Plaintiff's allegation that his rights were violated by the restriction on his movement following the riots. Accordingly, these claims will be addressed together. In Count Three, Plaintiff contends that Defendants G. Janda, Larry Small, R. Madden, T. Ochoa and N. Grannis violated his right to freedom of religion and RLUIPA when he was not allowed to observe Ramadan in the chapel with the Muslim congregation. Id. at 9. On September 15 and 16, 2008, a prison riot occurred in Calipatria. Id. As a result, Defendants Janda and Smalls placed most inmates under a program where their privileges and mobility throughout the prison were limited. Id. Defendants Madden and Small then modified the program instructing that no more than ten inmates at a time could be out of their cells at the same time and that religious services were required to take place "in-cell." Id.

Plaintiff challenged this program on the grounds that it would interfere with Ramadan services.  Id.  Plaintiff asked that Muslim inmates be escorted, ten at a time in accordance with the restrictions on movement, to the chapel so that they could perform congregational prayers.  Id.  Plaintiff, in his grievance, asserted that when prisoners had been under similar restrictions in 2006, prison personnel made provisions to allow Muslim prisoners to fast in the chapel and to make congressional prayers.  Id. at 10.  Plaintiff's grievance  was dismissed and his second level appeal to Defendants G. Janda and T. Ochoa was denied.  Id.  Plaintiff's appeal to Defendant Grannis at the third level also was denied.  Id.

In Count Four, Plaintiff contends that Defendants M. Carpio, R. Madden, R. Powell, T. Ochoa and N. Grannis violated his right to freedom of religion and RLUIPA when they refused to allow him to perform the Eidul Fitr prayer after Ramadan.  Id.  On October 1, 2008, Plaintiff informed prison staff that once Ramadan concluded on October 2, 2008, he would need to perform the Eidul Fitr prayer with a Muslim congregation.  Id.  Plaintiff contends that Defendant Carpio informed Officer Jones that Defendant Madden had denied his request.  Id.  Plaintiff informed prison staff that the Eidul Fitr prayer needed to be made with a congregation and could not be performed individually.  Id.  Prison staff did not respond to his request and Muslim inmates were not permitted to pray as a congregation.  Id.

On October 6, 2008, Plaintiff submitted a complaint about the incident which was denied at the first level of review by Defendant Powell.  Id. at 10-11.  Plaintiff's second level appeal was denied by Defendants Builteman and Ochoa.  Id. at 11.  Plaintiff's third level appeal was denied by Defendant Grannis.  Id.

For the reasons discussed above in Section IV-1, the remaining Defendants in Count Three are Defendants Small and Madden.  Similarly, the only remaining Defendants in Count Four are Defendants Carpio and Madden.

Counts Three and Four - § 1983 Claims

The first Turner factor weighs heavily in favor of Defendants.  Defendants have a strong interest in maintaining the safety and order of the prison, and restricting movement of prisoners as a result of prison riots is in keeping with those interests.  While Plaintiff asserts that the

1   Defendants' restored other privileges while continuing to restrict Plaintiff's ability to visit the

2   chapel, this does not eliminate the strong interest of Defendants in maintaining prisoner and officer

3   safety.

4         The second <u>Turner</u> factor weighs in favor of Defendants.  Defendants note that Plaintiff

5   could conduct his prayers and fast in his cell, and observe all other tenets of his religion.  (Doc.

6   No. 47 at 14).  Plaintiff, on the other hand, contends that his prayers must be made in the chapel.

7   However, even if the inability to visit the chapel impinged on Plaintiff's ability to practice his

8   religion, it did not foreclose it.  Plaintiff could practice his religion in-cell and had access to his

9   Qu'ran.  Because Plaintiff was not denied "all means of religious expression" this factor weighs in

10  favor of Defendants.  <u>Shakur</u>, 514 F.3d at 886.

11        The third <u>Turner</u> factor also weighs in favor of Defendants.  Defendants have a strong

12  interest in securing the prison following a riot.  Defendants' assertion that allowing prisoners to

13  move about would have severely hampered their efforts to secure and search the prison is entitled

14  to deference.  <u>Turner</u>, 482 U.S. at 90.

15        Finally, the fourth <u>Turner</u> factor weighs slightly in Plaintiff's favor.  Plaintiff presents

16  alternative measures that Defendants could have taken that would allow Muslim inmates to move

17  to the chapel without compromising prison safety.  While Defendants claim these are not viable

18  alternatives, and that Plaintiff did not have enough information available to him to make this

19  determination, the Court must accept Plaintiff's assertions as true at this stage.  <u>Thompson</u>, 295

20  F.3d at 895.

21        Analyzing all the <u>Turner</u> factors, Plaintiff has not sufficiently pled that the restrictions on

22  his movement following a prison riot was not reasonably related to a legitimate penological

23  interest.  <u>Turner</u>, 482 U.S. at 90.  Accordingly, it is recommended that Defendants' Motion be

24  **GRANTED** as to Plaintiff's First Amendment claims under Counts Three and Four of his FAC,

25  and his claims be **DISMISSED** without prejudice.

26        <u>Counts Three and Four - RLUIPA Claims</u>

27        In their Motion, Defendants contend that the restriction on moving prisoners to the chapel

28  was necessary in order to secure the prison following two prison riots.  (Doc. No. 47 at 19).

1    Furthermore, Defendants contend that Plaintiff could have observed Ramadan and performed the

2    Eid prayer in his cell.  Id.  Plaintiff counters that the Eid prayer must be made by group in the

3    chapel, and cannot be made on an individual basis.  (FAC at 10-11).

4         Plaintiff has satisfied his initial burden of showing that the regulation was a substantial

5    burden on his religious exercise.  RLUIPA instructs that "it shall be construed in favor of broad

6    protection of religious exercise."  42 U.S.C. § 2000cc-3(g).  While Plaintiff had the option to

7    conduct the prayer in his cell, the Court must consider his assertion that he was required to

8    perform his prayer in a group.  Because Plaintiff has met his burden, Defendants must show that

9    the regulation was in furtherance of a compelling state interest and was the least restrictive means

10   of achieving that interest.

11        Prison security following a large-scale racial incident is a compelling government interest.

12   The safety of prisoners and officers are concerns "central to all other corrections goals."  Pell v.

13   Procunier, 417 U.S. 817, 827 (1974).  However, Defendants have not shown that confining

14   Plaintiff to his cell was the least restrictive means of achieving that interest.  Defendants contend

15   that because they allowed in-cell services, they were employing the least restrictive means.  (Doc.

16   No. 47 at 25).  Plaintiff, on the other hand, contends that prisoners could have been escorted to the

17   chapel in small groups.  (FAC at 12).  Plaintiff relies upon instances in 2006 where prison

18   administrators were able to provide for Ramadan services during similar conditions.  (FAC at 9-

19   10).  The Court is mindful that RLUIPA may not be used to "elevate accommodation of religious

20   observances over an institution's need to maintain order and safety[,"] and the Court must give

21   "due deference to the experience and expertise of prison and jail administrators in establishing

22   necessary regulations and procedures to maintain good order, security and discipline, consistent

23   with consideration of costs and limited resources."  Cutter, 544 U.S. at 722.  However,

24   Defendants' bare assertion that alternatives were not possible is not enough to overcome Plaintiff's

25   claims.  Accordingly, it is recommended that Defendants' Motion be **DENIED** as to Plaintiff's

26   RLUIPA claims under Counts Three and Four of his FAC.

27   / / /

28   / / /

### Count Five

In Count Five, Plaintiff contends that Defendants W. Meister, B. Bentley, T. Ochoa and N. Grannis violation his right to freedom of religion and RLUIPA when they withheld a Ramadan package that had been shipped to Plaintiff. Id. at 11. On October 10, 2008, Plaintiff was sent a Ramadan package containing 29.78 pounds of Halal/Kosher foods. Id. at 12. Initially, the mailroom returned all Ramadan packages that had been received, and many prisoners' families had the packages resent. Id. Receipt of Plaintiff's package was initially refused by Defendant Meister on October 10, 2008. Defendant Meister refused the package again when it was resent on October 11, 2008. On October 19, 2008, Meister informed Plaintiff that the package had been rejected because Ramadan had ended on October 12. Id.

Plaintiff appealed the decision to withhold his package. The first level appeal was denied by Defendant Bentley. Id. Plaintiff appealed to the second level, reasserting his complaint and claiming that his initial appeal had been denied without Plaintiff having been accorded an interview. Id. at 12-13. Plaintiff's appeal was denied at the second level by Defendants Builteman and Ochoa. Id. at 13. Plaintiff's appeal was denied at the third level by Defendant Grannis. Id.

For the reasons discussed above in Section IV-1, only Defendant Meister remains in Count Five.

#### Count Five - § 1983 Claim

In their Motion, Defendants analyze this claim under Turner and state that the prison has a valid interest in creating a fixed period for Muslim inmates to receive Ramadan packages. (Doc. No. 47 at 15). However, this misconstrues Plaintiff's allegation. Plaintiff does not allege that the regulation is inappropriate. Rather, Plaintiff alleges that he complied with the regulation and was still denied receipt of his package. (FAC at 12-13). Defendants acknowledge that Plaintiff's package was received on October 10, 2008, and that packages could be received until October 12, 2008. (Doc. No. 47 at 15-16). Defendants do not appear to be claiming that Plaintiff did not comply with the regulation instead asserting that they were unable to pick-up the mail until October 13, 2008. Furthermore, the Court is required to accept Plaintiff's claim that his package was timely delivered as true. Thompson, 295 F.3d at 895.

1    Accordingly, it is recommended that Defendants' Motion be **DENIED** as to Plaintiff's

2    First Amendment claims under Count Five of his FAC.

3

4    Count Five - RLUIPA Claim

5    Plaintiff contends that Defendants violated RLUIPA when they refused to provide him

6    with a Ramadan package that had been mailed to him.  (FAC at 12-13).  In their Motion,

7    Defendants contend that Plaintiff has not pled a substantial burden on his religion, and that even if

8    he had, the need to screen inmate packages is a compelling interest.  (Doc. No. 47 at 19-20).

9    Defendants are correct that Plaintiff has not pled a substantial burden on his religious

10   practice.  Plaintiff claims that he was not able to practice his religion, but the regulation governing

11   the receipt of his Ramadan package did not cause him to be unable to eat Halal food.  Plaintiff is

12   not claiming that the policy itself creates a substantial burden, but that the policy was not

13   followed, a claim which is better addressed in his § 1983 claim.  Even if the policy did create a

14   substantial burden, Defendants have shown that it was the least restrictive means of meeting a

15   compelling government interest.

16   Defendants contend that screening packages for contraband is necessary.  (Doc. No. 47 at

17   20).  As discussed above, prison safety and security are compelling government interests.  Pell,

18   417 U.S. at 827.  Furthermore, actually screening the packages received is the only mechanism for

19   achieving that goal.  The policy is an accommodation to religious prisoners that allows for the

20   receipt of special packages during a significant holiday, and the policy allows enough time for

21   prisoners to receive their packages for Ramadan.  (Doc. No. 47 at 20).  Accordingly, it is

22   recommended that Defendants' Motion be **GRANTED** as to Plaintiff's RLUIPA claims under

23   Count Five of his FAC, and his claims be **DISMISSED** without prejudice.

24                              **Count Six**

25   In Count Six, Plaintiff contends that his First Amendment Right to Freedom of Speech and

26   RLUIPA were violated on April 26, 2010, when unnamed prison staff confiscated his photocopied

27   versions of religious books and a self-defense manual.  Id. at 14.  Plaintiff contested the

28   confiscation and his first level appeal was denied by Defendant Sergeant Morales on the grounds

1    that the items seized depicted techniques that could physically harm people.  Id.  Plaintiff's second

2    level appeal was denied by Defendant J. Builteman who noted that the materials contained

3    references to Black Guerilla Family representative George Jackson and the Nation of Islam, which

4    are banned in California correctional facilities as gang-related.  Id.  Plaintiff's third level appeal

5    was denied by M. Hodges Wilkins and D. Foster.  Id.  On November 4, 2010, Plaintiff was

6    interviewed by Defendant Builteman and Officer Guil.  Id.  Plaintiff contends that during this

7    interview he clarified that the confiscated material did not contain gang propaganda and requested

8    the material back.  Id.  Plaintiff again requested his materials back in December, 2010, but

9    Defendant Builteman refused.  Id.

10        For the reasons discussed above in Section IV-1, the only remaining defendant in Count

11   Six is Defendant Morales.

12        Count Six - § 1983 Claim

13        Plaintiff does not identify any person alleged to have violated his free speech rights or the

14   manner in which his rights were allegedly violated.  Rather, Plaintiff's allegations under Count Six

15   focus on his RLUIPA claim.  A plaintiff must present more than vague or conclusory allegations in

16   order to survive a motion under Fed. R. Civ. P. 12(b)(6).  Sprewell, 266 F.3d at 988.  Because

17   Plaintiff has failed to articulate a cognizable claim, it is recommended that Defendants' Motion be

18   **GRANTED** as to Plaintiff's First Amendment claims under Count Six of his FAC, and Plaintiff's

19   claim be **DISMISSED** without prejudice.

20        Count Six - RLUIPA Claim

21        In their Motion, Defendants contend that Plaintiff has failed to show that his religious

22   exercise was substantially burdened and that Plaintiff's claim contains vague and unsupported

23   allegations of a conspiracy against all Muslim inmates.  (Doc. No. 47 at 20).

24        Defendants are correct that Plaintiff has not met his initial burden of showing that his

25   religious exercise was substantially burdened.   Cutter, 544 U.S. at 722.  Plaintiff has failed to

26   allege any burden upon his religious practice.  Moreover, at least one of the confiscated texts, the

27   self-defense manual, is unrelated to his religious practice.  Regarding the religious texts, Plaintiff

28   contends that the confiscated texts were photocopies.  (FAC at 14).  Plaintiff has not asserted that

these texts were not otherwise available to him.  While the Court must construe Plaintiff's claims broadly, the Court cannot supply essential elements that have not been pled.  Furthermore, Plaintiff's vague and conclusory allegations regarding a conspiracy against Muslim inmates likewise fails, as it fails to identify with any clarity what actions or policies Plaintiff is challenging.  Lee, 250 F.3d at 688.

Accordingly, it is recommended that Defendants' Motion be **GRANTED** as to Plaintiff's RLUIPA claim under Count Six of his FAC, and Plaintiff's claim be **DISMISSED** without prejudice.

### 4. Qualified Immunity

Qualified immunity protects "government officials... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity does not protect a defendant when: (1) the defendant's action violated a federal constitutional right; and, (2) the right was clearly established at the time of the conduct at issue.  LSO, Lt. V. Stroh, 205 F.3d 1146, 1157 (9th Cir. 2000).  A qualified immunity defense is generally not amenable to a motion under Rule 12(b)(6) because facts necessary to establish an affirmative defense generally must be shown by matters outside the complaint.  See Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999) (holding that, in light of court's duty to accept allegations in the complaint as true, a finding of qualified immunity in a motion to dismiss is inappropriate).  While a ruling on immunity "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive[,]" (Saucier v. Katz, 533 U.S. 194, 199 (2001)), the court is usually "not equipped at this stage to determine whether qualified immunity will ultimately protect [the defendant].  Those issues must be resolved at summary judgment or at trial."  Id.; see also Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001).

Defendants are correct that, in some cases, qualified immunity can be determined in a motion under Rule 12(b)(6).  In Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010), the Ninth Circuit emphasized that qualified immunity is "a right not merely to avoid standing trial, but also

to avoid the burdens of such pretrial matters as discovery." (internal citations omitted).  Therefore, when the record is clear that the official had a reasonable belief that his conduct was lawful, a court may properly dismiss a claim on the basis of qualified immunity.  See Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993).

It is inappropriate to dismiss a claim on this basis unless it is clear from the face of the complaint that qualified immunity applies. Groten v. California, 251 F.3d 844, 851 (9th Cir.2001) (citing Jensen v. City of Oxnard, 145 F.3d 1078, 1085 (9th Cir.1998)).  Here, it is not obvious from the face of the complaint that Defendants are entitled to qualified immunity.  Accordingly, the Court cannot find that qualified immunity applies at this time.

## V.    CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED**:

1) Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claims against Defendants Pickett, Greenwood, Bentley, Janda, Ochoa, Grannis and Builteman.

2) Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's remaining §1983 and RLUIPA claims against Defendants Hopper and Powell under Count 1.

3) Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's § 1983 claim under the establishment clause, and **DENIED** as to Plaintiff's free exercise clause and RLUIPA claims against Defendant Lew under Count 2.

4) Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's remaining § 1983 claims and **DENIED** as to Plaintiff's RLUIPA claims against Defendants Small, Madden, and Carpio under Counts 3 and 4.

5) Defendants' Motion to Dismiss be **DENIED** as to Plaintiff's § 1983 claim and **GRANTED** as to his RLUIPA claim against Defendant Meister under Count 5.

6) Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's § 1983 and RLUIPA claims against Defendant Morales under Count 6.

7) Defendants' Motion to Dismiss based on Qualified Immunity be **DENIED**.

This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988).  Any party may

1   filed written objections with the court and serve a copy on all parties by **December 23, 2011**.  The

2   document shall be captioned "Objections to Report and Recommendation."  Any reply to the

3   objections shall be served and filed by **January 13, 2012**.  The parties are advised that failure to

4   file objections within the specific time may waive the right to raise those objections on appeal of

5   the Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6         **IT IS SO ORDERED**.

7   DATED:  December 1, 2011

8

9                                              _____
                                               Hon. Mitchell D. Dembin
10                                             U.S. Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28