1
2
3
4
5
6
7

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10    OMAR ERNEST EPPS,                     Case No. 10cv1949 BEN (KSC)

11                              Plaintiff,  **ORDER GRANTING**
                                            **DEFENDANTS' MOTION**
12         vs.                              **FOR SUMMARY**
                                            **JUDGMENT**
13    N. GRANNIS, et al.,

14                             Defendants.

15                          **I.  INTRODUCTION**

16         Plaintiff Omar Ernest Epps, a prisoner at California's Calipatria State Prison

17    proceeding *pro se*, filed a First Amended Complaint on February 26, 2011.  In his

18    Amended Complaint he named fourteen defendants in six counts alleging fifteen

19    claims for relief.

20         Plaintiff's claims for relief were grouped into two categories: (a) the § 1983

21    claims; and (b) the Religious Land Use and Institutionalized Persons Act of 2000

22    ("RLUIPA") claims.  Previously, all of the § 1983 claims were dismissed against all

23    of the Defendants except the claim in Count Five against Defendant Meister in his

24    individual capacity. At the same time the civil rights claims were dismissed, an

25    Order to Show Cause was issued because it appeared that the RLUIPA claims might

26    be moot.  After both parties filed responses, the Court found that some of the

27

28                                   - 1 -

RLUIPA claims were, in fact, moot.  However, the RLUIPA claim in Count 2 about a prison policy of denying Plaintiff a Kosher diet, the RLUIPA claim in Count 5 about a prison policy on Plaintiff's purchasing through religious vendors, and the RLUIPA claim in Count 6 about a policy of retaining Plaintiff's confiscated religious books described a continuing case or controversy and so the Court set the claims to be tried on the merits.  The Defendants have now moved for summary judgment on each of these remaining claims.

As an introductory matter, it is noted that Plaintiff has recently notified the Court of a change of address.  He indicates that he is no longer housed at Calipatria State Prison.  The new address is Centinela State Prison.  *See* Notice filed September 9, 2013 (docket no. 138).  As a result of the move, his RLUIPA claims seeking injunctive relief are probably moot.  "An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action." *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (quoting *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995)).  The same is true for a transfer from one prison to another.  *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325-26 (5th Cir. 2009).  "The reasons for finding mootness in such a context are clear.  Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim."  *Lee v. Gurney*, Case No. 3:08cv99, 2010 WL 5113782, at *10 (E.D. Va. Dec. 9, 2010) (dismissing RLUIPA claim upon plaintiff's transfer to different prison).  However, even if the claims are not moot because of his transfer, they fail for other reasons.

## II.  DISCUSSION

Summary judgment must be granted where the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "persuade the court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

## A.  The RLUIPA Claims

RLUIPA provides that a government generally shall not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a).  This general prohibition is tempered.  A burden is permissible if it is not substantial or if it is in furtherance of a "compelling government interest" and is the least restrictive means of furthering that interest.  *Id.* The standard is to be applied giving "'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'"  *Hartmann v. Cal. Dep't of Corrections*, 707 F.3d 1114, 1124 (9th Cir. 2013) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005)).

The plaintiff bears the initial burden of proof on whether a policy substantially burdens his exercise of religion.  *Id.*  For a plaintiff who is incarcerated, the Ninth Circuit Court of Appeals has held that, "a substantial burden occurs 'where the state . . . denies an important benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 1125 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005).  If the Plaintiff bears his initial burden, then the burden shifts to the government.  "Once the plaintiff establishes that the challenged state action substantially burdens his religious exercise, the government bears the burden of

establishing that the regulation serves a compelling government interest and is the least restrictive means of achieving that interest." *Shakur v. Schriro*, 514 F.3d 878, 889 (9th Cir. 2008).

### 1. Named Defendants Lack Authority

The first question Defendants pose is about their limited official authority to change the policies Plaintiff challenges. RLUIPA does not provide for awards of money damages against prison officials. *Alvarez*, 667 F.3d at 1063 (RLUIPA does not provide for damages against state officials); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1114 (9th Cir. 2010) (same); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (RLUIPA does not provide for damages against individual capacity defendants for denial of Kosher meals); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 329 (5th Cir. 2009) (RLUIPA does not provide for damages against individual capacity defendants); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009) (same); *Smith v. Allen,* 502 F.3d 1255, 1275 (11th Cir. 2007) (same). On the other hand, RLUIPA may provide injunctive relief.

To win injunctive relief, a plaintiff need not prove a named official's personal involvement in the alleged RLUIPA violation. *Hartmann*, 707 F.3d at 1127. Instead, a plaintiff must name as a defendant a government official who can appropriately respond and change policy if injunctive relief is ordered. *Id.* ("Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and *name the official within the entity who can appropriately respond to injunctive relief.*" (emphasis added)).

Plaintiff has named a large number of prison officials as Defendants. However, Defendants have presented numerous declarations demonstrating that none of the sued Defendants have authority to change their actions or change the prison policies of which Plaintiff complains.

Some Defendants have retired from their positions with the state prison

- 4 -

system.  More have transferred away from the prison where Plaintiff is incarcerated. Those who still work at Calipatria State Prison have neither the authority to change departmental policies or procedures nor the power to change, circumvent, or act contrary to those policies – according to the current Acting Warden, F. Chavez.  *See* Declaration of F. Chavez, dated July 31, 2013 (Exhibit "G" to Defendants' Motion for Summary Judgment).  Plaintiff submits no evidence to the contrary beyond his own "understanding."  In *Hartmann*, the Ninth Circuit permitted RLUIPA claims to proceed against two individuals who *did* have authority to carry out injunctive relief, *i.e.*, the Secretary of the California Department of Corrections and the Warden of the plaintiff's prison.  707 F.3d at 1127 & n.2 (defendants admitted Secretary of CDCR and Warden were most appropriate defendants to execute court-ordered injunctive relief).  Here, Epps has named neither the Secretary of the California Department of Corrections, nor the Warden of Calipatria State Prison.  Therefore, Defendants' joint motion for summary judgment on the RLUIPA claims is granted because there is no genuine issue as to each Defendant's lack of authority to execute any possible RLUIPA court-ordered relief.

### 2. The Halal/Kosher Diet Claim

Even if Plaintiff had sued a proper defendant, the defendant would be entitled to summary judgment.  For example, Count Two asserts that the prison denies Plaintiff a Kosher diet.  Prison policy provides for a Kosher diet for inmates of the Jewish faith.  However, Plaintiff has asserted not that he is Jewish, but Muslim.  He is provided a "Religious Meat Alternative" ("RMA") diet; it is a diet designed to be respectful of practicing Muslims.  "The RMA diet was designed to conform to the Islamic faith.  It includes Islamic Halal meat for dinner and vegetarian meals for breakfast and lunch."  *See* Declaration of S. Andersen (Associate Warden), dated July 30, 2013 (Exhibit "F" to Defendants' Motion for Summary Judgment).  In his opposition, Plaintiff cites his deposition evidencing that he has been receiving the

1    RMA diet, but questions whether it is in fact a Halal diet.  *See* Opposition of

2    Plaintiff, at 16.

3        While he offers reasons for why he questions whether the RMA diet is Halel,

4    he does not go further and declare that the prison's provision of the RMA diet has

5    pressured Plaintiff to abandon his religious beliefs.  Instead, like the unsuccessful

6    plaintiffs in *Hartmann*, "[r]ather than claiming [he] has been pressured to abandon

7    [his] religious beliefs, Plaintiff[] seek[s] additional religious accommodations

8    beyond those already provided by the prison. . . ."  707 F.3d at 1125.

9        Epps claims that he is entitled to a Kosher diet because, he says, a Kosher diet

10   is also Halal.  In his Amended Complaint Epps says that the RMA diet causes him

11   chronic constipation, persistent gas, bloating, abdominal cramps, and chest pains,

12   "all of which places [him] in a state of ritual impurity."  The Complaint suggests the

13   Kosher diet would relieve all of that.  Except that there is no evidence in the record

14   about whether a Kosher diet would have any effect on his physical condition.  Epps

15   offers only his own speculation that a Kosher diet would cure his gastrointesinal

16   maladies.  There is no evidence that Epps has either presented his physical

17   complaints to medical staff or that medical staff have prescribed a Kosher diet to

18   address his ills.

19       Epps' claim stands in contrast to the plaintiff's claim in *Shakur v. Schriro*.  In

20   *Shakur*, the prisoner was not offered a Halal diet.  Instead, he was offered only a

21   vegetarian diet with no meat.  *Shakur*, 514 F.3d at 881.  The other contrast is that in

22   *Shakur*, the only evidence of the expense of a kosher meal was from a prison

23   chaplain.  *Id.* at 889-90.  Here, Defendants provide a declaration from the

24   Correctional Food Manager at Calipatria explaining that the cost of a RMA diet is

25   $3.10/day while a Kosher diet costs the prison $8.70/day per inmate.  *See*

26   Declaration of A. Covarrubias, dated July 31, 2013 (Exhibit "H" to Defendants'

27   Motion for Summary Judgment).  There are 176 inmates receiving the RMA diet

28

- 6 -

while only 6 receive the Kosher diet. *Id.* The food manager also states that, "[i]nmates who suffer from physical ailments because of their diet may obtain an order from a physician that directs the food management team to alter their diet to resolve the problem." *Id.*

This is sufficient uncontested evidence to demonstrate that the Defendants' provision of a RMA diet is the least restrictive means of furthering its interests in containing the costs of simultaneously feeding inmates and accommodating inmates' religious beliefs. Epps simply seeks an additional accommodation beyond what the prison provides. There is, of course, no issue raised about whether Epps' religious belief is sincerely held. However, he has not submitted evidence creating a genuine issue about whether his religious belief has been substantially burdened or showing that if it has been, that there is no compelling interest for the burden or that there is another less restrictive means available to serve the compelling interest. Defendants are entitled to summary judgment on Count Two.

### 3. The Quarterly Package Policy

Even if Plaintiff had sued a proper defendant, the defendant would be entitled to summary judgment on Count Five challenging the quarterly package policy. Under the policy, an inmate may order products or food once a quarter to be received in prison. Any time packages from outside a prison are delivered to an inmate inside a prison, the package presents security and safety concerns. To ameliorate those concerns, inmates may order from approved vendors who agree to work with the prison. "[T]he religious purchase policy works to limit the introduction of contraband into the institution by pre-approving vendors who are willing to meet specific requirements designed to ensure safety and security." *See* Declaration of S. Andersen (Associate Warden), dated July 30, 2013 (Exhibit "F" to Defendants' Motion for Summary Judgment). In addition, an inmate may order a religious item from a non-approved vendor if a Chaplain approves. The item then

1    must pass a safety analysis. *Id.* These extra packages for religious items do not

2    count against an inmates' quarterly package allowance. *Id.*

3         In Count Five, Plaintiff claims that a package from an exclusively Muslim

4    vendor should fall under the extra religious package exception. Epps submits his

5    own declaration and the declaration of Brandon Holsey (a Calipatria inmate). He

6    describes how, in his opinion, the prison does not comply with state regulations and

7    the department operation manual. Yet, Epps does not go further and declare that the

8    prison's quarterly package policy has pressured Plaintiff to abandon his religious

9    beliefs. Instead, like the unsuccessful plaintiffs in *Hartmann*, "[r]ather than claiming

10   [he] has been pressured to abandon [his] religious beliefs, Plaintiff[] seek[s]

11   additional religious accommodations beyond those already provided by the prison. . .

12   ." 707 F.3d at 1125. Summary judgment is the time for each party to present

13   evidence sufficient to carry their own burden of proof or cast substantial doubt on

14   the other's proof. Here, Plaintiff's proof that the policy works a substantial burden

15   is lacking. Also lacking is any evidence that the quarterly package policy does not

16   serve a compelling government interest by a least restrictive means. There is

17   evidence that permitting inmates to receive packages through the mail implicates

18   security and safety concerns. One way to maintain security is to prohibit all

19   packages. The prison has a more generous policy. The more generous policy does

20   not impose a substantial burden on Epps' religious practice. Defendants are entitled

21   to summary judgment on Count Five. *See also Davis v. Powell*, 901 F. Supp. 2d

22   1196, 1232 (S.D. Cal. 2012) (dismissing RLUIPA claim that California prison

23   quarterly package policy may have made purchases from favorite vendor more

24   difficult, but did not rise to a substantial burden).          **4. Seized Religious**

25   **Written Materials**

26        Here again, even if Plaintiff had sued the proper Defendants, the Defendants

27   would be entitled to judgment on Count Six challenging the seizure and retention of

28

some of Plaintiff's religious written materials. The defect in this claim for relief is that it is now moot. According to the Amended Complaint, written materials were seized from Epps' cell in 2010. Some were religious papers; some were self-defense papers. He does not complain of the withholding of the self-defense manual. He does complain of the retention of the religious writings and seeks their return. However, in his recent declaration, Epps states that the religious papers were returned to him in November 2012. *See* Declaration of O. Epps, ¶ 56, dated August 15, 2013 (Attachment to Plaintiff's Opposition to Motion for Summary Judgment).

Mootness is the doctrine of standing set in a time frame. That is, standing "must continue throughout" the case. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 189 (2000); *Sanford v. MemberWorks, Inc*., 625 F.3d 550, 556 (9th Cir. 2010). Because Epps' materials have been returned to him (albeit two years after they were first seized) and there is no other evidence that the prison has a policy of seizing and retaining an inmate's religious writings or that Epps' same papers will be re-seized in the future, this RLUIPA claim is moot. "A claim is moot when the issues presented are no longer live." *Alvarez*, 667 F.3d at 1064 (citations omitted) (finding moot a prisoner's RLUIPA claim).

**B. The § 1983 Claim Against Defendant Meister**

Count Five stated a claim against Defendant Meister acting in his individual capacity. Epps claims that Meister deprived him of a special package mailed to him for the observance of Ramadan in 2008. According to the Complaint, Ramadan took place during September and October 2008, ending on October 2, 2008. Epps claims that a Ramadan package addressed to him arrived at the prison on October 10th but Meister refused acceptance of the package. He claims the refusal was in violation of a prison policy that permitted inmates to receive Ramadan packages as late as ten days after the end of Ramadan. The package was eventually returned to the sender. Epps claims that he was denied "the expression of my religion through eating

- 9 -

Halal/Kosher foods." He seeks $318 in damages from Defendant Meister "for inappropriately refusing to accept plaintiff's special religious Ramadan package."

In order to establish a First Amendment violation, Epps must prove that Defendant Meister "burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Defendant Meister points out several shortcomings in Plaintiff's evidence. First, there is a lack of evidence that Meister burdened Epps' practice of his religion. There is no question that Epps' package arrived on October 10, 2008, at the earliest. That was a week after the observance of Ramadan had concluded. If Meister had picked up and not rejected the package on the 10th day of October, it would still have been too late for Epps' Ramadan observance. That the prison had a policy of accepting Ramadan packages for several days after Ramadan had ended is more than what is required by Epps' faith. That the policy may not have been followed does not make it a First Amendment violation. Moreover, Epps offers no evidence about what he expected to find in the contents of the returned package. He does declare, without explaining the connection, that he was deprived of "the use and benefit of the Halal and Kosher meat and fish." *See* Declaration of O. Epps, ¶ 19, dated August 15, 2013 (Attachment to Plaintiff's Opposition to Motion for Summary Judgment). Even at that, Epps does not explain how meat and fish were mandated by his religion on October 10th or later, after Ramadan had ended.

Second, Epps offers no evidence to cast doubt on the explanation that Meister's actions were reasonably related to legitimate penological interests. As noted earlier, mail packages to inmates present issues of prison safety and security. There is no evidence suggesting Meister was acting out of personal animus or an institutional policy designed to deter Epps from practicing his faith.

More importantly, the evidence paints a different picture in which Meister never had a chance to reject Epps' Ramadan package on October 10, 2008. Meister offers the declaration of Sgt. B. Bentley who worked as the mail room Sergeant during October 2008. *See* Declaration of B. Bentley, dated July 30, 2013 (Exhibit "I" to Defendants' Motion for Summary Judgment). Bentley explains that he would travel to the local post office Monday through Friday, arriving between 9:00 a.m. and 9:30 a.m. to pick up mail addressed for Calipatria State Prison. He says he did this on October 10, 2008 and left between 10:00 a.m. and 10:30 a.m. Bentley says that days later he informed Plaintiff that a package had arrived at the local post office at 11:09 a.m. on Friday, October 10, 2008 -- *after* he had already returned to the prison. Bentley says that there was no mail picked up on either Saturday or Sunday following Friday, October 10, 2008, as was the usual custom. The inference is that Meister could not have rejected Epps' package on October 10, 2008, because the package had not yet been brought to the prison.

The inference is borne out by Meister's own declaration. Meister recalls that he worked in the mail room at the prison in 2008. *See* Declaration of W. Meister, dated July 26, 2013 (Exhibit "Q" to Defendants' Motion for Summary Judgment). Meister says, "I know that I never personally rejected a Ramadan package intended for Plaintiff on or before October 12, 2008." *Id.* He explains that during the following week he filled out a form with the remark: "Ramadan expired 10-10-08." Meister offers that he believed the period for inmates to receive Ramadan packages ended on October 10, 2008. *Id.* Meister's memory comports with that of inmate Brandon Holsey, according to a declaration submitted by Plaintiff. The Court is not weighing competing evidence. It finds that there is no genuine issue because all of the evidence is consistent. Plaintiff's package was not picked up from the local post office on October 10, 11, or 12. Likewise, Defendant Meister, who worked only inside the prison mail room, did not have the opportunity to reject Plaintiff's

package on October 10, 11, or 12.  There is no evidence demonstrating that Meister personally burdened Epps' religious practice.  There is evidence that Meister was simply acting in accordance with prison policy reasonably related to legitimate penological interests.  Therefore, Defendant Meister, sued in his individual capacity, is entitled to summary judgment on Count Five.

### III.  CONCLUSION

Defendant Meister is entitled to summary judgment on the § 1983 claim against him.  The remaining RLUIPA claims may now be moot as a result of Plaintiff's prison transfer.  Even if all of the RLUIPA claims are not moot, the claim in Count Six challenging the seizure and retention of some of Plaintiff's religious written materials is now moot.  Finally, even if the claim in Count Six is not moot, Defendants are entitled to summary judgment on all of the RLUIPA claims. Plaintiff has not prevailed on any of his claims and judgment may be entered in favor of all Defendants.  The Clerk of Court may close the case.

IT IS SO ORDERED.

DATED:  September 21, 2013

Hon. Roger T. Benitez
United States District Judge